FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA. 9K

2019 MAR 22  A 9: 51

WILLIAM W. BLEVINS
CLERK

# FELONY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### BILL OF INFORMATION FOR CONSPIRACY TO
### COMMIT BANK FRAUD AND NOTICE OF FORFEITURE



| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO.** |
| **v.** | * | **SECTION:** SECT.    MAG. 2 |
| **GREGORY ST. ANGELO** | * | **VIOLATION: 18 U.S.C. § 1349** |
| | * | |
| * * * | | |

The First Assistant United States Attorney, Michael M. Simpson, as the Attorney for the

United States, acting on the authority conferred by Title 28, United States Code, Section 515,

(hereinafter, "the Attorney for the United States") charges that:

### COUNT 1 – Conspiracy to Commit Bank Fraud

**A.    AT ALL MATERIAL TIMES HEREIN:**

1.    First NBC Bank was a financial institution, as defined in Title 18, United States

Code, Section 20, and a member of the Federal Deposit Insurance Corporation ("FDIC") with

federally insured deposit accounts.

X Fee       USA
___ Process
X Dkid
___ CtRmDep
___ Doc. No.

2.     First NBC Bank was established in or about 2006, with its headquarters in New Orleans, Louisiana, within the Eastern District of Louisiana. At various times, First NBC Bank maintained branch offices in Louisiana, Mississippi, and Florida.

3.     First NBC Bank was the wholly-owned subsidiary of First NBC Bank Holding Company. Bank President A was a founder of First NBC Bank and acted as its president and Chief Executive Officer from in or around May 2006, until in or around December 2016.

4.     From in or around 2006 through April 2017, Bank Officer B was employed by First NBC Bank as its Chief Credit Officer, and was responsible for, among other things, the overall quality of the bank's lending function; the bank's credit policies and administration; its loan recovery and collection efforts; and its monitoring and managing of past due loans, including the approval of the bank's internal list of past due loans.

5.     In or around May 2013, First NBC Bank Holding Company became a publicly-traded company listed on the NASDAQ.

6.     On or about April 28, 2017, First NBC Bank was closed by the Louisiana Office of Financial Institutions. The FDIC was named Receiver.

7.     The defendant, **GREGORY ST. ANGELO ("ST. ANGELO")**, was an attorney and resided in St. Tammany Parish, within the Eastern District of Louisiana. **ST. ANGELO** was a member or officer of, or otherwise exercised control over, the following entities, among others: St. Angelo Investment Company, L.L.C., Premier Information Systems, Inc., St. Fitz, L.L.C., LMH Properties, L.L.C., Lismore Properties, L.L.C., Conti Development, L.L.C., Annadele, Inc., 616 Girod, L.L.C., and La Nasa, St. Angelo, and La Nasa, L.L.C. (collectively, the "Entities").

8.      From in or around 2006, through April 2017, **ST. ANGELO** had a banking relationship with First NBC Bank individually and through certain Entities.

9.      From in or around July 2006, through in or around September 2016, Bank President A acted as the loan officer for **ST. ANGELO** and certain Entities.

10.     From in or around September 2006, through in or around September 2016, **ST. ANGELO** was the general counsel of First NBC Bank, providing general legal advice and services, including, but not limited to, transactional work, legal research, litigation, and collections.

11.     In connection with applications for loans from First NBC Bank, **ST. ANGELO** had an obligation to provide accurate financial statements prior to any advances, renewals, or increases in loans extended to him and certain Entities.

12.     When **ST. ANGELO** submitted personal financial statements to First NBC Bank on his behalf or on behalf of certain Entities, he and others, including, Bank President A, and Bank Officer B, caused these supporting documents to be placed into First NBC Bank's records.

13.     By the time First NBC Bank failed in late April 2017, the balances on loans issued to **ST. ANGELO** and certain Entities totaled approximately $46.7 million, and First NBC Bank had also paid **ST. ANGELO** approximately $9.6 million for purported tax credit investments.

**B.      CONSPIRACY TO COMMIT BANK FRAUD:**

Beginning at a time unknown to the Attorney for the United States, but at least in or around 2006, through in and around April 2017, in the Eastern District of Louisiana and elsewhere, the defendant, **GREGORY ST. ANGELO**, and others known and unknown to the Attorney for the United States, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States of America, that is: to knowingly and with the intent to defraud,

3

execute and attempt to execute a scheme and artifice to defraud First NBC Bank, a financial institution, and to obtain any of the moneys, funds, credits, and assets, owned by and under the custody or control of First NBC Bank, by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Section 1344.

## C.      THE PURPOSE OF THE CONSPIRACY:

The purpose of the conspiracy was for the defendant, **ST. ANGELO**, Bank President A, Bank Officer B, and others to enrich themselves unjustly by disguising the true financial status of **ST. ANGELO**, the Entities, and other borrowers, concealing the accurate performance of loans, and misrepresenting the nature of payments to **ST. ANGELO** and certain Entities.

## D.      MANNER AND MEANS OF THE CONSPIRACY:

The manner and means by which the defendant, **GREGORY ST. ANGELO**, Bank President A, Bank Officer B, and others sought to accomplish the purpose of the conspiracy included the following:

1.      **ST. ANGELO**, Bank President A, Bank Officer B, and others provided First NBC Bank with materially false and fraudulent documents and personal financial statements, which, among other things, overstated the value of **ST. ANGELO**'s and the Entities' assets, understated their liabilities, and omitted material information.

2.      The materially false and fraudulent personal financial statements, collateral summaries, and other documents concealed **ST. ANGELO**'s and the Entities' true financial condition.

3.      Bank President A, Bank Officer B, and others disguised **ST. ANGELO**'s and the Entities' true financial condition by, among other things, issuing new loans to **ST. ANGELO** and certain Entities to pay older loans that **ST. ANGELO** was unable to repay and

to cover his overdrafts. The new loans then appeared to be current, while the old loans and overdrafts appeared to have been paid. In reality, the new loans were designed to avert the downgrading or impairment of **ST. ANGELO**'s and several Entities' loans and to avoid reporting them as nonperforming or losses to the bank.

4.      Another means the conspirators used to disguise **ST. ANGELO**'s and the Entities' true financial condition was to extend the maturity date of older loans on which **ST. ANGELO** was unable to make payments, which allowed First NBC Bank to avoid downgrading, impairing, or reporting the loans as nonperforming or losses to the bank.

5.      Bank President A, Bank Officer B, and others funded fraudulent tax credit investments that First NBC Bank purportedly made in certain Entities owned by **ST. ANGELO**. In reality, the supposed investments simply funneled money from First NBC Bank's general ledger to **ST. ANGELO** and certain Entities, so that **ST. ANGELO** could make his loan payments and cure overdrafts, and so the bank could avoid downgrading, impairing, or reporting the loans as nonperforming or losses to the bank.

6.      On multiple occasions, Bank President A and **ST. ANGELO** executed false documents entitled "Agreements to Purchase Tax Credits" designed to make it appear that First NBC Bank was paying **ST. ANGELO** money in exchange for ownership interests in entities supposedly owned by **ST. ANGELO**. In reality, these agreements were a way for Bank President A, Bank Officer B, and **ST. ANGELO** to justify the diversion of bank funds to **ST. ANGELO** and certain Entities to cure overdrafts and avoid reporting requirements. On multiple occasions, Bank Officer B directed the disbursement of payments to **ST. ANGELO** and certain Entities from First NBC Bank's general ledger, purportedly for tax credit investments, knowing that the tax credit investments were false.

7.      Yet another means by which Bank President A, **ST. ANGELO**, Bank Officer B,

5

and others concealed the true financial condition of **ST. ANGELO**'s loans was to lend funds to **ST. ANGELO**'s associates as nominees. Bank President A and **ST. ANGELO** caused the nominees to sign loan documents, making it appear that the nominee entity was taking out the loan solely for its own use. In truth and in fact, often the loan proceeds were paid to **ST. ANGELO** or the Entities, not the nominees, and were, in part, used to pay **ST. ANGELO**'s and the Entities' existing debts to First NBC Bank or to enrich **ST. ANGELO**.

8.      **ST. ANGELO**, Bank President A, and Bank Officer B caused employees of First NBC Bank to transfer the nominee loan proceeds directly to **ST. ANGELO**'s or the Entities' deposit accounts, when **ST. ANGELO**, Bank President A, and Bank Officer B knew the loans were not solely for the nominee, but benefitted **ST. ANGELO**, who was not named in the loan documents or listed as a guarantor.

9.      Beginning in or around March 2004 and continuing through the present, **ST. ANGELO** entered into a 30-year lease agreement where one of the Entities, St. Angelo Investment Company, L.L.C., leased a building located at 622 Conti Street in New Orleans, Louisiana.

10.     From in or about February 2006 through the present, 622 Conti, LLC was the owner and lessor of the property located at 622 Conti Street, and **ST. ANGELO** and St. Angelo Investment Company, LLC paid rent to 622 Conti, LLC. **ST. ANGELO** and the Entities were neither owners nor were they members of 622 Conti, LLC.

11.     In July and August of 2010, **ST. ANGELO**'s Premier Information Systems checking account was overdrawn by more than $730,000. It was overdrawn approximately $480,000 in July and approximately $250,000 in August. In each respective month, Bank President A, Bank Officer B, and **ST. ANGELO** caused a debit from the First NBC Bank general ledger to cover the overdrafts. The debit tickets falsely stated the debited amounts of

6

$500,000 and $400,000 were for an investment in 622 Conti LLC, "per [Bank Officer B]." Shortly after each debit, the money was credited to the Premier Information Systems checking account in the same amounts as the corresponding general ledger debits. By on or about August 30, 2010, **ST. ANGELO**'s Premier Information Systems checking account was again overdrawn, this time by approximately $87,878.47.

12.     On or about December 28, 2010, First NBC Bank's outside counsel informed **ST. ANGELO** and Bank President A that **ST. ANGELO** could not legally claim historic tax credits for the property at 622 Conti Street. They were both informed that **ST. ANGELO**'s current lease was too short to qualify for the tax credits. They were further informed that, in order to qualify for the proposed tax credits, either 1) **ST. ANGELO**'s lease on 622 Conti Street had to be extended; or 2) **ST. ANGELO** had to purchase 622 Conti Street from the current owner. At no point between December 2010 and the present was the end date of the lease extended. At no point did **ST. ANGELO** or the Entities own the property at 622 Conti Street or have any membership in 622 Conti, LLC.

13.     Despite this knowledge, in or around March 2013, Bank President A and **ST. ANGELO** created false and fraudulent operating agreements, purporting to show that First NBC Bank would be investing in historic tax credits for the rehabilitation of 622 Conti Street. One such operating agreement was falsely backdated to January 1, 2009, and purportedly showed that **ST. ANGELO**'s Entity, St. Angelo Investment Company, L.L.C., was entitled to claim tax credits on the building. This false and backdated document was forwarded to external auditors.

14.     In addition, beginning in or about August 2010 and continuing through a date unknown, but at least until in or about May 2015, Bank President A and **ST. ANGELO** executed multiple versions of false and fraudulent documents entitled "Agreement to Purchase Tax

Credits 622 Conti, LLC" (hereinafter, "False Purchase Agreements"). In these documents, **ST. ANGELO** and Bank President A falsely represented that **ST. ANGELO** was selling interests in 622 Conti, LLC, a company he did not own, to First NBC Bank in exchange for investments by the bank. The False Purchase Agreements also stated that 622 Conti, LLC would spend large sums of money on renovations to the 622 Conti Street building, and that 622 Conti, LLC had applied for and was eligible for federal and state historic tax credits. In reality, the payments listed in the False Purchase Agreements had been made to **ST. ANGELO** and the Entities, not 622 Conti, LLC, and were used primarily to pay existing debt at First NBC Bank, cover overdrafts, and benefit **ST. ANGELO**. **ST. ANGELO** falsely endorsed each False Purchase Agreement as the "Managing Member" of 622 Conti, LLC, an entity he did not own and of which he was not a member. Bank President A likewise endorsed each False Purchase Agreement, knowing that **ST. ANGELO** was not a member of 622 Conti, LLC.

15.    Defendant **ST. ANGELO** and Bank President A caused these False Purchase Agreements and others to be placed in the files of First NBC Bank.

16.    On or around March 27, 2015, Bank President A requested that a bank employee email the False Purchase Agreements to an external auditor.

17.    In total, the payments that Bank President A, **ST. ANGELO**, and Bank Officer B caused First NBC Bank to make to **ST. ANGELO** and certain Entities, purportedly for tax credits related to 622 Conti Street, totaled more than $7.3 million.

18.    In addition, Bank President A and **ST. ANGELO** caused more than $2.3 million in fraudulent payments to be made by First NBC Bank to **ST. ANGELO** and certain Entities, purportedly for tax credit investments in additional properties owned and controlled by **ST. ANGELO**: Annadele restaurant in Covington, Louisiana and a building located at 616 Girod Street in New Orleans, Louisiana. **ST. ANGELO** never applied for or received any tax credits

8

for these properties. Both Bank President A and **ST. ANGELO** knew that these properties did not qualify for tax credits. Nevertheless, Bank President A and **ST. ANGELO** executed false tax credit purchase agreements for Annadele and 616 Girod and caused these fake agreements to be placed in the bank's books and records. **ST. ANGELO** and Bank President A signed these additional fraudulent purchase agreements to avoid the downgrading, classification, non-accrual, or impairment of **ST. ANGELO** and certain Entities' loans.

19.     Bank President A and Bank Officer B approved fraudulent tax credit investments for **ST. ANGELO**'s properties routinely at month-end. For example, on or about December 11, 2014, a First NBC Bank employee emailed Bank Officer B requesting permission to cover **ST. ANGELO**'s overdrafts with tax credit money. The employee asked Bank Officer B, "Are we out of tax credits for conti? Do you know?" Bank Officer B responded, "As long as we have a sharp pencil we are never out of tax credits," acknowledging that the tax credits were false. The bank employee responded, "LOL…..I think that just made my day…." Approximately ten days later, Bank Officer B approved a $450,000 debit to the First NBC Bank general ledger for a tax credit investment in 622 Conti, LLC. Bank Officer B then approved a credit to the 616 Girod deposit account of approximately $450,000, which covered overdrafts to certain Entities and went to **ST. ANGELO**'s personal account at a different bank.

20.     By the time First NBC Bank went into receivership in April of 2017, Bank President A, **ST. ANGELO**, and Bank Officer B had caused First NBC Bank to make more than $9.6 million in fraudulent payments to **ST. ANGELO** or the Entities, purportedly to purchase and invest in false tax credits.

21.     **ST. ANGELO**, Bank President A, and Bank Officer B knew that **ST. ANGELO** and the Entities did not qualify for these tax credits, and that the tax credits were merely a means to increase **ST. ANGELO**'s cash flow to assist him in paying overdrafts and remaining current

9

on his and certain Entities' loans with the bank.

All in violation of Title 18, United States Code, Section 1349.

## BANK FRAUD FORFEITURE

1.      The allegations contained in Count 1 of this Bill of Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2.      Upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set forth in Count 1 of this Bill of Information, the defendant, **GREGORY ST. ANGELO**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).

3.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(2)(A) and 28 U.S.C. § 2461(c).

MICHAEL M. SIMPSON
Attorney for the United States
Acting under authority conferred
by 28 U.S.C. § 515

_____
SHARAN E. LIEBERMAN
Assistant United States Attorney

_____
MATTHEW R. PAYNE
Assistant United States Attorney

_____
NICHOLAS D. MOSES
Assistant United States Attorney

_____
J. RYAN MCLAREN
Assistant United States Attorney

New Orleans, Louisiana
March 22, 2019

11

No. _____

# United States District Court

## FOR THE

EASTERN _____ DISTRICT OF _____ LOUISIANA

UNITED STATES OF AMERICA

vs.

GREGORY ST. ANGELO

BILL OF INFORMATION
FOR CONSPIRACY TO
COMMIT BANK FRAUD

Violation(s):   18 U.S.C. § 1349

Filed _____ , 20 19 ___

_____ , Clerk.

By _____

_____ , Deputy

_____

Assistant United States Attorney

SHARAN E. LIEBERMAN